UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
EDDIE BROWN,

                     Petitioner,

        -against-

UNITED STATES OF AMERICA,

                     Respondent.
---------------------------------------------------------X
DEARIE, Chief Judge.

**MEMORANDUM & ORDER**

01 CV 7350 (RJD)

Pro se petitioner, Eddie Brown, brings this motion to vacate his conviction pursuant to 28

U.S.C. § 2255. For the reasons stated below, the motion is denied and the petition is dismissed.

**BACKGROUND[1]**

Petitioner was arrested along with several co-defendants accused of running a Queens-

based robbery crew. The defendants were tried together by a jury before the Honorable Eugene

H. Nickerson. On October 1, 1997, the jury convicted petitioner of: (1) conspiring to possess

cocaine with the intent to distribute between January 1994 and November 9, 1996, in violation of

21 U.S.C. §§ 841 and 846; (2) conspiring to obstruct interstate commerce by robbery between

January 1994 and November 9, 1996, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act"); (3)

attempting to possess cocaine with intent to distribute on or about November 9, 1996, in

violation of 21 U.S.C. §§ 841 and 846; and related firearms offenses. Defendants appealed. The

Second Circuit upheld the convictions by a summary order dismissing defendants' challenges to

---

[1] The Court assumes the parties' familiarity with the factual background of this case, the
relevant aspects of which are set forth in Judge Nickerson's December 7, 1998 Memorandum &
Order, United States v. Cambrelen, 29 F. Supp. 2d 120 (E.D.N.Y. 1998).

the sufficiency of the evidence, as well as their claims under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). <u>United States v. Cambrelen</u>, No. 98-1724, 5 Fed. Appx. 30 (2d Cir. 2001).

In October of 2001, after filing a motion to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2), petitioner brought the instant action. Petitioner made four initial claims: (1) that because the indictment did not charge that defendant committed counts one, two and three "willfully," the district court lacked jurisdiction over his case; (2) that the district court improperly amended the indictment by instructing the jury that "willfully" was an element of the crimes charged in counts one, two and three; (3) that the omission of the element of "willfulness" from the indictment violated petitioner's Sixth Amendment right to notice of a specific charge; and (4) that trial counsel was ineffective for not objecting to the fact that it was not made clear whether petitioner was convicted as a principal or as an aider and abettor on counts three and five. Petitioner later sought and was granted permission to amend his petition to include claims that (5) trial counsel was ineffective for not raising claims one and two, <u>supra</u>, and (6) that appellate counsel was ineffective for failing to raise the same issues on appeal.

In response to the government's April 19, 2002 letter to this Court, petitioner withdrew his motion to modify his sentence but moved additionally (7) to vacate, set aside or correct his sentence under to the Second Circuit's rulings in <u>United States v. Guevara</u>, 277 F. 3d 111 (2d. Cir. 2001), amended on rehearing by <u>United States v. Guevara</u>, 298 F.3d 124 (2d Cir. 2002), and <u>United States v. Thomas</u>, 274 F.3d 655 (2d Cir. 2001). In the same letter, petitioner added a further challenge to his conviction based upon the fact that (8) "Counts [Four and Five] of the indictment violate the double jeopardy clause because they twice charge Petitioner under 18

2

U.S.C. § 924(c)(1) for possessing the same firearm." Pet.'s Apr. 27, 2002 Letter 2.[2]

## DISCUSSION

### I.    Sufficiency of the Indictment

Petitioner's first three claims stem from the fact that, with regard to the conspiracy and attempt charges, the jury was charged with finding "that the defendant knowingly and willfully joined the conspiracy," Pet.'s Oct. 26, 2001 Mot. 4, 7, and "that the defendant 'willfully' took some action that was a substantial step in an effort to bring about or accomplish the crime," id. at 8, despite the fact that the indictment charged him with "knowingly and *intentionally*" (emphasis added) conspiring and attempting to commit these crimes. Petitioner did not raise these claims at trial and therefore must demonstrate both cause and actual prejudice in order to prevail. Bousley v. Untied States, 523 U.S. 614, 622 (1998). The Court addresses these claims in turn.

### A.    Jurisdiction

Petitioner claims that his indictment is defective for failing to charge that he willfully committed the crimes at issue. Pet.'s Oct. 26, 2001 Mot. 5 ("Since Brown's indictment does not charge that 'willfully' is an essential element of the instant offense[s], this Count does not charge

---

[2] By letter dated January 19, 2006, petitioner moved to further amend his petition to include claims under Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker, 543 U.S. 220 (2005), and United States v. Shepard, 544 U.S. 44 (2005). The Court grants this motion to amend but rejects the claims. Neither Blakely, nor Booker, is retroactively applicable to cases on collateral review. Carmona v. United States, 390 F.3d 200, 202-03 (2d Cir. 2004) (stating that the Supreme Court has not made Blakely retroactive on collateral review); Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005) (finding that Booker "does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued."). Shepard addressed whether a sentencing court can look to police reports in making a "generic burglary" decision under the Armed Career Criminal Act and has no application to this case.

[those] crimes."). In support he cites United States v. Velez for the proposition that willful

membership is a crucial element of the charge of conspiracy, 652 F.2d 258, 261 (2d Cir. 1981);

United States v. Du Bo for the holding that an indictment that fails to include the mens rea

element of a Hobbs Act charge is fatally deficient, 186 F.3d 1177, 1179 (9th Cir. 1999); and

United States v. Tran for the principle that "[A] 'failure of the indictment to charge an offense

may be treated as [a] jurisdictional' defect, . . . and an appellate court must notice such a flaw

even if the issue was raised neither in the district court nor on appeal," 234 F.3d 798, 806 (2d

Cir. 2000) (quoting United States v. Foley, 73 F.3d 484, 488 (2d Cir.1996)), overruled by U.S. v.

Thomas, 274 F.3d 655 (2d Cir. 2001).

These cases are either inapposite or irrelevant. In Velez, the Second Circuit held that the

district court's refusal to recharge the "willfulness element" upon a request by the jury for

supplementary instructions was erroneous and prejudicial. That holding, however, had nothing

to do with the sufficiency of the underlying indictment and simply reinforced the principle that

"willfulness" is an essential element of conspiracy that should be included in all iterations of the

jury charge—especially when a defendant's only defense is that he was not a knowing participant

in the crime. 652 F.2d at 262. Even if petitioner had argued at trial that he did not act willingly,

Judge Nickerson properly charged the jury with finding the willfulness element of those crimes.

In Du Bo, the Ninth Circuit stated that "[a]lthough not stated in the Hobbs Act itself,

criminal intent—acting 'knowingly or willingly'—is an implied and necessary element that the

government must prove for a Hobbs Act conviction." 186 F.3d at 179. The Du Bo Court went

on to hold that "*if properly challenged prior to trial*, an indictment's complete failure to recite an

essential element of the charged offense is . . . a fatal flaw requiring dismissal of the indictment."

4

Id. (emphasis added). "The scrutiny given to an indictment depends, in part, on the timing of a defendant's objection to that indictment. Where a defendant raises an objection after a verdict has been rendered, we have held that an indictment should be interpreted liberally, in favor of sufficiency." United States v. Sabbeth, 262 F.3d 207, 218 (2d Cir. 2001) (citation omitted).

Petitioner did not challenge his indictment prior to trial, and even if he had, the instant case is distinguishable from Du Bo. The indictment in that case charged the defendant with "'unlawfully' affecting commerce by the 'wrongful' use of force," id., which the Court found failed to connote the proper mens rea under the Ninth Circuit's Hobbs Act jurisprudence. In contrast, the indictment in petitioner's case charged petitioner with "knowingly and intentionally" conspiring to violate the Hobbs Act and therefore properly referenced the mens rea element of the crime. Though the word "willfully" was subsequently used in the jury instruction instead of "intentionally," both words, especially when used in combination with the term "knowingly," adequately reference the requisite mental element of the crime. See, e.g., Browder v. United States, 312 U.S. 335, 342 (1941) (finding that "the word 'willful' often denotes an intentional as distinguished from an accidental act"); United States v. Ferrarini, 219 F.3d 145, 156 (2d Cir 2000) (finding in the context of a conspiracy charge that, "[a]lthough [a] definition of 'willful' includes references to knowledge, it also clearly and conjunctively requires a finding of intentional purposefulness").

In Tran, the Second Circuit decided not to apply the more deferential plain error standard on direct review where "[t]he district court acted outside its jurisdiction . . . in sentencing [the defendants] for the enhanced firearm offense not charged in their indictments." 234 F.3d at 810. The Tran Court held that convictions and sentences for enhanced firearm offenses that were not

charged separately from the underlying, "simple" § 924(c) firearm counts stated in the indictment could not stand. However, <u>Tran</u> was later overruled by <u>Thomas</u>, which held "contrary to <u>Tran</u>, that a defendant's claim that he was sentenced for a crime not fully alleged in the indictment . . . is a claim of error that is subject to plain error review pursuant to Fed. R. Crim. P. 52(b) when asserted for the first time on appeal." 274 F.3d at 666.

As stated above, on collateral review petitioner must demonstrate both cause and actual prejudice. He has done neither. In any case, the Court finds that the indictment was not deficient. The Court reiterates the maxim from <u>Sabbath</u> that "[w]here a defendant raises an objection after a verdict has been rendered, we have held that an indictment should be interpreted liberally, in favor of sufficiency." 262 F.3d at 218. As the government notes, "petitioner raises his claim not only after the verdict, but after the appeal of the verdict." Govt.'s Response 24.

**B.    Amendment of the Indictment**

Petitioner also argues that his "Constitutional Rights under the Fifth Amendment [were] violated where the Court through its jury instructions constructively amended his indictment . . ." Pet.'s Oct. 26, 2001 Mot. 11. "A constructive amendment of an indictment occurs when the presentation of evidence and jury instructions modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." <u>United States v. Clemente</u>, 22 F.3d 477, 482 (2d Cir. 1994). As noted above, Judge Nickerson's instructions properly charged an essential element of the crimes stated in the indictment. There is not a substantial likelihood that the defendant was convicted of any offense other than the ones charged in the indictment.

## C.    Notice

Petitioner also contends that "the 'omission' of willfulness in counts one, two and three violated [his] constitutional rights to notice of the charged offense." Pet.'s Mot. 12. Petitioner claims that he "was made aware that 'willfully' was an essential element of the crime that the government must prove 'only' [sic] during the court's jury charges." Id. at 14. As the Court noted above, the words "willfully" and "intentionally" both indicate the requisite mens rea element of charges one, two and three. Because that element was noted in the indictment, throughout the trial, and in the jury charge, the Court finds that petitioner had ample notice of not only the charged offenses, but also the requisite elements of those offenses.


## II.    Ineffective Assistance of Counsel

Ineffective assistance of counsel may be cause for a procedural default. Murray v. Carrier, 477 U.S. 478 (1986). To demonstrate constitutionally ineffective assistance, petitioner must show that (1) counsel's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) he was prejudiced by the deficient performance, id. at 692. An attorney cannot be faulted for declining to make meritless arguments. See e.g., United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995).

The Court finds that the petitioner had proper notice of the charges against him, that the indictment was neither deficient, nor constructively amended, and that the district court had jurisdiction over the charges alleged in the indictment. Because the underlying arguments are without merit, petitioner's related claims for ineffective assistance of both the trial and appellate counsel, see Pet. Jan. 11, 2002 Mot. to Amend, must be dismissed.

Petitioner's remaining ineffective assistance claim states that his trial counsel:

> was ineffective for failure to object and move for vacature of his convictions in Counts Three, Four and Five, where the jury instructions given in respect to those counts allowed the jury to convict the petitioner as either a 'principal or an aider and abettor' and since the jury returned a general verdict of guilty it was unclear on what theory the jury decided his guilt.

Pet.'s Mot. 15. In support of this claim, petitioner cites to <u>United States v. Scotti</u>, 47 F.3d 1237 (2d Cir. 1995). In that case the Second Circuit upheld Judge Nickerson's granting of a retrial after a defendant was convicted of collection of extensions of credit by extortionate means under § 894(a)(1).

Petitioner appears to claim that he was entitled to a special verdict. The government notes that while in <u>Scotti</u> the verdict was supportable on one theory but not on another, Gov't.'s Resp. 28, n. 7, by contrast, "the evidence [in this case] against Brown was based on his actual direct commission of the offenses charged. Thus, Brown's current argument that it was 'unclear on what theory the jury decided his guilt' is spurious," <u>id.</u> at 28.

To the extent that petitioner implicitly claims entitlement to a special verdict, this argument is without merit. As the government notes, the evidence at trial showed that Brown personally robbed various victims at gunpoint and that he entered the warehouse where the sting operation was set-up in an attempt to possess narcotics. This evidence was sufficient for a jury to convict the defendant as a principal on the robbery conspiracy, as well as the conspiracy and attempt to possess with the intent to distribute narcotics charges. In addition, under the United States Sentencing Guidelines, the sentences for these counts do not differ based on the distinction between principal and aider and abettor, and no adjustments were made that were role-

dependent.[3] See, e.g., Virella v. United States, 750 F. Supp. 111, 116 (S.D.N.Y. 1990) (stating

that special verdicts are generally appropriate "only when the information sought is relevant to

the sentence to be imposed"). Because petitioner was not prejudiced by the lack of specificity in

the jury's findings, his related ineffective assistance of counsel claim must fail.


## III.    Additional Claims

Petitioner also claims that his sentence should be vacated under the reasoning of Thomas,

274 F.3d 655, and Guevara, 277 F.3d 111. Pet. Apr. 27, 20002 Mot 3-6. Both of these cases

came down in the wake of Apprendi and were effected by the Supreme Court's subsequent

rulings in Harris v. United States, 536 U.S. 545 (2002), and United States v. Cotton, 535 U.S.

625 (2002). In light of those later opinions, the Second Circuit reversed its initial holding in

Guevara on the ground that "for reasons evident in Cotton . . . Guevara cannot establish that any

error seriously affected the fairness of judicial proceedings." Guevara, 298 F.3d 124, 126 (2d

Cir. 2002). Unlike Guevara, the iteration of Thomas cited by defendant was final and remains

good law. Nevertheless, Thomas, like Apprendi, applies only to those cases where the quantity

of drugs involved in a crime is used to impose a sentence above the statutory maximum that

would apply for an indeterminate quantity of drugs. Thomas, 274 F.3d at 667. As noted in

petitioner's direct appeal, "[t]he district court's finding as to the quantity of narcotics for which

they were responsible did not trigger the statutory 10-year mandatory minimum, and defendants

---

[3] In rejecting the probation department's recommended three level adjustment under U.S.S.G. § 3B1.1(b), Judge Nickerson specifically found that "Brown was an active member [in the conspiracy], but not a leader or a manager." United States v. Cambrelen, 29 F. Supp. 2d 120, 128 (E.D.N.Y. 1998).

were not sentenced above the statutory maximum. Accordingly, Apprendi is inapplicable."

Cambrelen, 5 Fed. Appx. at 35. For the same reasons, Thomas also does not apply.

Petitioner's final claim is that "Counts [four and five] violate the double jeopardy clause

because they twice charge Petitioner under 18 U.S.C. § 924(c)(1) for possessing the same

firearm." Pet. April 28, 2002 Mot. 2. Petitioner states incorrectly that there are "two predicate

offenses (1) possession of a drug with intent to distribute [count four] and (2) distribution of the

drug [count five] and a single gun continually possessed." Id. He cites United States v. Finley,

245 F.3d 199 (2d Cir. 1999), for the proposition that § 924(c)(1) does not warrant conviction:

> on two counts of possession of firearm during and in relation to a crime of drug
> trafficking, though there were two predicate offenses, possession of a drug with
> intent to distribute and distribution of the drug, where there was a single gun
> continually possessed, the predicate offenses were simultaneous or nearly so, they
> consisted of virtually the same conduct with the same criminal motivation, and
> one of them was a continuing offense.

Id. at 2-3. The defendant in Finley was charged with two separate counts of possession of a

firearm during and in relation to a crime of drug trafficking. In other words, the two charges

stemmed from "simultaneous predicate offenses consisting of virtually the same conduct." Id. at

207. In this case, the relevant indictments charge that petitioner "did knowingly and intentionally

use and carry a firearm during and in relation to a drug trafficking crime, to wit, the crime

charged in Count One, and a crime of violence, to wit, the crime charged in Count Two above"

and "did knowingly and intentionally carry a firearm during and in relation to a drug trafficking

crime, to wit, the crime charged in Count Three above." Gov't's Resp. Ex. 2. Counts one and

two charged claimant with conspiring to possess with intent to distribute cocaine and conspiring

to rob several apartments over a two and a half year period from January 1994 until his arrest on

November 9, 1996. Count three relates to the November 9, 1996, reverse sting that resulted in

the charges of attempt to possess cocaine with intent to distribute cocaine. Though the events of

November 9, 1996, were no doubt a part of the continuing conspiracies charged in counts one

and two, evidence was introduced at trial demonstrating multiple distinct robberies and drug-

related acts separate and apart from the November 9th events. There was evidence at trial that

during several of those other crimes, petitioner was armed. Whether or not petitioner was armed

with the same gun in these separate instances is irrelevant. The jury was charged to and

ultimately found that petitioner knowingly and intentionally carried a firearm during and in

relation to multiple crimes (including, but not limited to, the November 9, 1996 attempt to

possess cocaine). As a result, Finley is inapposite and petitioner does not present a valid double-

jeopardy argument.


## CONCLUSION

For the reasons stated above, claimants § 2255 motion to vacate his sentence is denied

and his petition is dismissed. A certificate of appealability shall not issue. See 28 U.S.C. §

2253. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
      May 20, 2008                    s/ RJD

                                          RAYMOND J. DEARIE
                                          United States District Judge